IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-01474-PAB-BNB

TICOA BROWN,

      Plaintiff,

v.

GERALD WHITMAN, Chief, in his official capacity,
CITY AND COUNTY OF DENVER, a municipality, and
OFFICER JOHN DOE, in his official and personal capacity,

      Defendants.

_____

## ORDER GRANTING SUMMARY JUDGMENT
_____

      This matter is before the Court on the Motion for Summary Judgment [Docket No. 33] of defendants the City and County of Denver, Colorado ("City") and Gerald Whitman, the chief of police of Denver ("Chief Whitman").  The motion is fully briefed and ripe for disposition.  For the reasons detailed below, the Court grants the motion for summary judgment.

## I.  FACTUAL BACKGROUND

      This case arises from a dog bite incident.  Between 2:00 and 3:00 a.m. on July 14, 2005, a Denver Police Department officer who had his police dog off leash, was searching for two suspected carjackers in a residential neighborhood.  The police dog located plaintiff Ticoa Brown, who had the misfortune of being in her backyard at the time of the search, and bit her, causing injuries.

      The facts, which are undisputed unless otherwise noted, are as follows.  The

Denver Police Department commenced the search near Ms. Brown's home at approximately 2:00 a.m. on July 14, 2005.  Defs.' Mot. for Summ. J. ("Defs.' Br.") [Docket No. 33], Statement of Undisputed Material Facts ("UF") ¶ 1; Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Br.") [Docket No. 45], Resp. to Undisputed Material Facts ("RUF") ¶ 1.  The search area encompassed a few city blocks, including Ms. Brown's backyard. Defs.' Br., UF ¶¶ 2-4; Pl.'s Br., RUF ¶¶ 2, 3-5.  Officer Brett Titus, a canine handler employed by the Denver Police Department, and his dog Stinger were dispatched to the scene at approximately 2:35 a.m.  Defs.' Br., UF ¶ 1; Pl.'s Br., RUF ¶ 1.  Officer Titus testified during discovery in this matter that he was informed via police radio that he was needed to assist in a search for two "armed carjackers" and that this information was confirmed upon his arrival at the site of the search.  Defs.' Br., Ex. A at 79-80.  Ms. Brown disputes this fact.  Without offering factual support, Ms. Brown suggests that any carjacking occurred two days before July 14, 2005 and that Officer Titus was responding to individuals who fled from a stolen vehicle after crashing on a street near her home. Pl.'s Br., RUF ¶ 2.

Upon arrival, Officer Titus searched an area that included Ms. Brown's backyard. Defs.' Br., UF ¶¶ 2-5 & Ex. A at 84; Pl.'s Br., RUF ¶¶ 2-5.  During the time that Officer Titus was searching, Ms. Brown was in her backyard.  She claims to have been seated in her car, parked in her backyard, until she saw Officer Titus shine a flashlight, at which time she recalls standing up on the edge of her car's doorframe.  Defs.' Br., Ex. B at 111.  Officer Titus' police dog, who was not on a leash, encountered Ms. Brown and bit Ms. Brown in the thigh.  Defs.' Br., UF ¶¶ 5-6, 8; Pl.'s Br., RUF ¶¶ 5-8.  Ms. Brown claims that, once she was bitten, the dog dragged her across her yard and would not

2

release her until Officer Titus physically removed it.  Pl.'s Br., RUF ¶¶ 6-7. Defendants

contest this description but do not cite evidence to the contrary in their summary

judgment briefing.  Following the incident, Ms. Brown was taken to the emergency room

and treated for injuries resulting from the dog bite.  Defs.' Br., UF ¶ 9; Pl.'s Br., RUF ¶ 9.

Ms. Brown's injuries included puncture wounds to her right thigh.  Defs.' Br., UF ¶ 8;

Pl.'s Br., RUF ¶ 8.

Ms. Brown asserts claims under 42 U.S.C. § 1983 against the City, Chief

Whitman, and "Officer John Doe" for violation of her rights under the Fourth Amendment

of the United States Constitution.  The City and Chief Whitman move for summary

judgment on all of Ms. Brown's claims.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c)

when "the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of*

*Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the

relevant substantive law it is essential to proper disposition of the claim.  *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over

material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

3

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When

reviewing a motion for summary judgment, a court must view the evidence in the light

most favorable to the non-moving party.  *Id.*

### B.  Untimely Amendment of Pleadings

Defendants first take issue with Ms. Brown's first, second, and third claims, which

they assert are pled only against an individual law enforcement official defendant,

named in the complaint as "Officer John Doe."   Defendants argue that these claims

must be dismissed because Ms. Brown failed to add Officer Brett Titus  –  who

undisputedly was the canine handler responsible for the police dog that bit Ms. Brown –

as a party to the litigation before the applicable statute of limitations expired or within

the time period for amendment of pleadings.  Ms. Brown responds that the statute of

limitations should be equitably tolled due to the City withholding information about

Officer Titus' identity.  Ms. Brown requests that she be allowed to substitute Officer Titus

in place of the "Officer John Doe" named in Ms. Brown's Complaint.

"Limitations periods in § 1983 suits are to be determined by reference to the

appropriate state statute of limitations and the coordinate tolling rules . . . ."  *Hardin v.*

*Straub*, 490 U.S. 536, 539 (1989) (internal quotation marks omitted).  The Tenth Circuit

has made clear that the statute of limitations for § 1983 actions brought in Colorado is

two years from the time the cause of action accrued.  *Fogle v. Pierson*, 435 F.3d 1252,

1258 (10th Cir. 2006).  "A § 1983 action 'accrues when facts that would support a cause

of action are or should be apparent.'"  *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675

(10th Cir. 1995).

In this case, Ms. Brown's cause of action accrued on July 14, 2005, the date on

4

which the police dog bit her.  It cannot be contested that the basis for Ms. Brown's

cause of action was apparent upon the occurrence of that incident.  Applying Colorado's

general two-year statute of limitations, Ms. Brown had until July 14, 2007 to file claims

against any person or entity allegedly responsible for her injuries.  Ms. Brown's

Complaint was filed on July 12, 2007, two days before the expiration of the limitations

period.  It is undisputed that Ms. Brown did not add Officer Titus as a party before the

statute of limitations lapsed.  As Ms. Brown recognizes in her response brief, her

proposed addition of Officer Titus does not relate back under Federal Rule of Civil

Procedure 15(c)(1)(C) to the date of her original Complaint due to her naming a John

Doe party.  *See Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) ("A plaintiff's

designation of an unknown defendant as 'John Doe' in the original complaint is not a

formal defect of the type Rule [15(c)(1)(C)] was meant to address.").  Thus, the question

is whether the statute of limitations should be equitably tolled so as to allow Ms. Brown

to add Officer Titus as a party at this stage in this litigation.

In a § 1983 action, "[s]tate law governs any tolling of [the statute of limitations]

period, except that federal law might also allow additional equitable tolling in rare

circumstances." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)

(citations omitted).  Ms. Brown has the burden to show grounds for equitable tolling.

*Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992).  I look

exclusively to state law as a basis for tolling in this case because Ms. Brown has not

identified any unique grounds under federal law for tolling the limitations period.  Under

Colorado law, a statute of limitations may be equitably tolled where a plaintiff did not

timely file her claims because a defendant's wrongful conduct prevented the plaintiff

5

from doing so or because of "extraordinary circumstances." *Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007). Ms. Brown does not contend that extraordinary circumstances are present in this case so as to toll the statute of limitations on that basis. Moreover, the Court has not located any Colorado case where the "exceptional circumstances" tolling exception was applied. *Cf. Brodeur*, 169 P.3d at 150 ("since stating in *Dean Witter Reynolds* that extraordinary circumstances may toll the statute of limitations, this court has never found such circumstances to exist"). Instead, Ms. Brown asserts that the City's wrongful conduct – failing to earlier disclose Officer Titus' identity as the canine handler involved in her dog bite incident – justifies tolling the statute of limitations in this case.

Ms. Brown claims that she first contacted the City regarding the July 14, 2005 dog bite incident in July 2005 and requested information again at a later date. As evidence of this correspondence, Ms. Brown submits a notification dated October 31, 2005 from the Denver Police Department, Civil Liability Bureau advising Ms. Brown that she would have to obtain information using a "motion of discovery" directed to "the prosecuting District or City Attorney." Pl.'s Br., Ex. 2. Ms. Brown also submits a letter from her former counsel to the Denver City Attorney dated November 28, 2005, which requested a copy of the incident report and written or photographic documentation concerning the dog bite incident, along with responses from City employees dated December 12 and 29, 2005. Pl.'s Br., Ex. 1. Ms. Brown contends that despite her requests to the City for information about the incident, including the name of the canine handler involved, she did not receive such information until she obtained it in response to discovery requests in this litigation. In particular, Ms. Brown states that while the

6

initial disclosures provided by the City identified Officer Titus as an individual having

knowledge of the facts relevant to this case, she was not able to identify Officer Titus as

the canine handler until obtaining relevant documents on November 30, 2007, after Ms.

Brown and the City obtained a stipulated protective order from the Court.

Ms. Brown relies on *Strader v. Beneficial Finance Co.*, 551 P.2d 720, 724 (Colo.

1976), and *Garrett v. Arrowhead Improvement Association*, 826 P.2d at 855, to argue

that the City was obligated to produce the information she requested before she

commenced this case and conducted discovery.  In these cases, the Colorado Supreme

Court held that a defendant's failure to provide the plaintiff with information that the

defendant was required to disclose pursuant to a state statute could constitute grounds

for equitable tolling of the statute of limitations.  Ms. Brown claims that the Colorado

Open Records Act ("CORA"), Colo. Rev. Stat. §§ 24-72-201 to -206, obligates the City

to provide information that would have allowed her to earlier identify Officer Titus as a

proper party to this case.

The CORA provides that "[a]ll public records shall be open for inspection by any

person at reasonable times," unless one of the Act's exclusions or another source of

Colorado law exempts disclosure.  Colo. Rev. Stat. § 24-72-203.  The term "public

records" means "all writings maintained, or kept by the state, any agency, institution . . .

or political subdivision of the state . . . ." *Id.* § 24-72-202(6)(a)(I).  "Public records" do

not include certain criminal justice records.  *Id.* § 24-72-202(6)(b)(I).  Instead, the

Colorado Criminal Justice Records Act ("CCJRA"), Colo. Rev. Stat. §§ 24-72-301 to -

309, governs the disclosure of "criminal justice records."  Such records include "all

books, papers, cards, photographs, tapes, recordings, or other documentary materials,

7

regardless of form or characteristics, that are made, maintained, or kept by any criminal justice agency in the state for use in the exercise of functions required or authorized by law or administrative rule . . . ." *Id.* § 24-72-302(4).  A "criminal justice agency" is defined, among other things, as "any agency of any . . . city . . . or law enforcement authority that performs any activity directly relating to the detection or investigation of crime . . . ." *Id.* § 24-72-302(3).  The Denver Police Department, from which Ms. Brown sought information relating to the dog bite incident, is undoubtedly a criminal justice agency under the CCJRA.  It is also apparent that the information Ms. Brown requested consisted of documents, such as the incident report, made by the Denver Police Department.  Accordingly, these documents were criminal justice records subject to the CCJRA, rather than the CORA.  If the CCJRA requires the City to disclose the information requested by Ms. Brown, then an equitable basis exists for tolling the limitations period.  *See Arrowhead Improvement Ass'n*, 826 P.2d at 854 ("a defendant's failure to provide information that he was under a statutory duty to disclose provide[s] an equitable basis for tolling the statute of limitations").

Turning to the disclosure requirements of the CCJRA, the Court finds that Ms. Brown has not demonstrated that the City improperly failed to provide her with information concerning Officer Titus' involvement.  Unlike the CORA, the CCJRA makes disclosure of criminal justice records – as contrasted to records of "official actions" of a criminal justice agency – subject to the discretion of the custodian.  Colo. Rev. Stat. §§ 24-72-303, -304, -305; *see also Harris v. Denver Post Corp.*, 123 P.3d 1166, 1174 (Colo. 2005).  Based on the plain language of the statute, the types of documents identified by Ms. Brown in this case are not records of official actions.  *See* Colo. Rev.

8

Stat. § 24-72-302(7) (defining "official action" to include arrest, indictment, charging by information, and similar formal pronouncements).  Thus, disclosure by the City of the records requested by Ms. Brown was within the custodian's discretion pursuant to §§ 24-72-304 and -305 of the CCJRA.  Even if the correspondence Ms. Brown received from the City in October and December 2005, which advised her to pursue alternate means to obtain the requested documents, constituted a refusal to provide such documents, Ms. Brown has not shown that she followed the procedures set forth in the CCJRA for obtaining that information in the face of the City's non-cooperation.  *See id.* § 24-72-305(7) (providing that any person denied access to inspect any criminal justice record may apply to the district court of the district where that record is located for an order to show cause why the custodian should not permit inspection of such record).

All told, Ms. Brown has not demonstrated that the City failed to provide information to her such that she was prevented from asserting her claims against Officer Titus within the two-year statute of limitations.  Because Ms. Brown has not sustained her burden to prove grounds for equitable tolling, the Court concludes that Ms. Brown cannot now substitute Officer Titus for "Officer John Doe."  Defendants are therefore entitled to summary judgment on Ms. Brown's First, Second, and Third claims for relief to the extent that they are pled against the individual defendant, Officer John Doe.

I now briefly address defendants' contention that because Ms. Brown's claims against Officer Titus are time barred, her claims against the City also cannot proceed. Defendants' theory appears to be that because no law enforcement officer is a proper party to the lawsuit in his individual capacity, Ms. Brown cannot prove that there has been a constitutional violation by one of the City's employees.  Defendants cite *Williams*

9

*v. City & County of Denver*, 99 F.3d 1009, 1018 (10th Cir. 1996), for this argument.  But that case merely reiterates the straightforward rule that in order for a municipality to be held liable under the doctrine of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the plaintiff must prove a constitutional violation by one of the municipality's employees.  Presumably, if the evidence supports her claims, Ms. Brown can prove that Officer Titus violated her constitutional rights under the Fourth Amendment without naming him as a party to this lawsuit.  Therefore, whether or not Officer Titus is a party to this lawsuit is of no bearing on the merits of the claims Ms. Brown asserts against the City.  Accordingly, the Court now turns those claims (and her claims alleged against Chief Whitman in his official capacity, which are one in the same)[1].

### C.  Municipal Liability Under § 1983

Ms. Brown's Complaint appears to make claims under § 1983 for two Fourth Amendment violations: unreasonable seizure by use of excessive force and seizure without a reasonable suspicion of criminal activity or probable cause.[2]  Ms. Brown's

---

[1]  With the exception of Ms. Brown's supervisory liability claim directed to Chief Whitman, the Court hereinafter refers to Ms. Brown's claims against both Chief Whitman and the City simply as the claims against the City because a § 1983 lawsuit against a municipal official acting in his official capacity is equivalent to one against the municipality.  *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir.1988).

[2]  Ms. Brown phrased the latter claim as a violation of her right to be subject to seizure only after a finding of probable cause for her detention.  The Court interprets this claim as Ms. Brown has done in her response brief to the City's motion for summary judgment: as a claim that she was improperly detained by Denver Police Department officers when they did not harbor a reasonable suspicion she was engaged in criminal activity.  Ms. Brown did not develop any argument in her response brief regarding a lack of probable cause for her subsequent arrest on an outstanding warrant.  Given an apparently valid warrant for her arrest, the City had probable cause to arrest her.

claim charging defendants with "unreasonable uses of force" is encompassed by her excessive force claim. *See Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir.2007) ("The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest."); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that claims law enforcement officers used excessive force in the course of an arrest, investigatory stop, or other seizure of a citizen not otherwise in custody should be analyzed under the Fourth Amendment reasonableness standard). Ms. Brown also pled in her Complaint a specific claim against the City for "supervisory and municipal liability." Ms. Brown explicitly referred to her excessive force claim when pleading this municipal liability claim, alleging that certain policies of the Denver Police Department are to blame for her injuries.

### 1. Investigative Detention Without Reasonable Suspicion of Criminal Activity

Ms. Brown did not specifically identify detention without a reasonable suspicion of criminal activity as a basis for municipal liability in her Complaint. Nevertheless, she includes a paragraph in her response brief that, to the extent the Court is able to decipher, argues that the City maintains an unconstitutional policy as to what constitutes reasonable suspicion for an investigative stop. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007) ("Investigative detentions, . . . which are Fourth Amendment seizures of limited scope and duration, are reasonable if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity."). The City focused its summary judgment briefing on Ms. Brown's excessive force claim, but did set out some relevant authorities concerning municipal § 1983 liability in general,

and the City seeks summary judgment on all claims.  To the extent that Ms. Brown claims that the City is liable under the doctrine of *Monell v. New York City Department of Social Services* for an unconstitutional policy or custom regarding reasonable suspicion – including an alleged failure to train law enforcement officers on this topic – such claims are wholly unsupported and must be dismissed.

The dog bite incident involved in this case is the sole basis for Ms. Brown's claim against the City relating to seizure without a reasonable suspicion that she was engaged in criminal activity.  However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  Ms. Brown offers no proof of any City policy or program, including any policy regarding the use of canines to apprehend suspects, that pertains to what constitutes reasonable suspicion of criminal activity that would justify an investigative detention.  Consequently, there is no evidence of any deficiency in such a policy or program before the Court.  Thus, even if her Fourth Amendment rights were violated because Officer Titus or other Denver Police Department officers had no reasonable suspicion to detain her on July 14, 2005, she cannot go forward with claims against the City on these grounds.  I turn now to Ms. Brown's excessive force claim.

### 2.  Excessive Force

#### a.  Underlying Fourth Amendment Violation

"A municipality can be found liable under § 1983 only where the municipality *itself*

12

causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95, 698). Thus, in order to hold the City liable under § 1983, Ms. Brown must prove that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694); *see also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.").

The first step in the analysis of Ms. Brown's excessive force claim is to determine whether there was a seizure under the Fourth Amendment. *Couture v. Bd. of Educ. of Albuquerque Public Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008). Although the parties do not address this initial issue in their summary judgment briefing, it is clear that Ms. Brown was seized within the meaning of the Fourth Amendment. *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citations omitted) ("A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking must itself be willful."); *see also Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001). Officer Titus released his police dog into Ms. Brown's backyard to locate any suspects hiding there. The evidence before the Court shows that police dogs employed by the Denver Police Department respond by biting and apprehending any moving person when they are deployed to search, whether they are specifically directed to do so or not after their release. Thus, even though Ms. Brown

13

was not the intended suspect, her freedom to leave was terminated by Officer Titus'
intentional release of his police dog into her yard.

The central question presented in a Fourth Amendment excessive force case is
whether the force used to effectuate the seizure was objectively reasonable.  *Marquez*
*v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir.2005) (citing *Graham*, 490 U.S. at
388).  "A court assesses the reasonableness of an officer's conduct from the
perspective of a reasonable officer on the scene, acknowledging that the officer may be
forced to make split-second judgments in certain difficult circumstances."  *Id.* (internal
quotation marks omitted).  "In assessing the reasonableness of the force used, a court
should consider, among other things: 'the alleged crime's severity, the degree of
potential threat that the suspect poses to an officer's safety and to other's safety, and
the suspect's efforts to resist or evade arrest.'"  *York v. City of Las Cruces*, 523 F.3d
1205, 1210 (10th Cir. 2008) (quoting *Graham*, 490 U.S. at 388).  In light of the unusual
situation in this case, where Ms. Brown was not the intended target of Officer Titus'
search, the Court must analyze the Fourth Amendment question from a reasonable
officer's perspective at the commencement of and during the canine search, "rather
than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

As detailed below, the evidence before the Court on the City's motion for
summary judgment is insufficient to allow the fact intensive Fourth Amendment analysis
required by *Graham v. Connor*.  In its motion papers, the City included only a brief
description of the events that took place on the early morning of July 14, 2005 that led
up to Officer Titus' police dog biting Ms. Brown.  Ms. Brown's response also falls short
of providing a full picture of the facts, although Ms. Brown attached a police report which

14

provides a more detailed description of the incident than the City set forth in its brief.

Notably, this police report also includes an annual review of other incidents where

Denver Police Department police dogs bit persons who were not suspected of a crime.

Pl.s' Br., Ex. 6 at 00065.  Two of these incidents besides the one at issue in this case

also involved Officer Titus and his police dog.  *Id.*  However, the other incidents

involving Officer Titus do not shed light on the questions presented in plaintiff's motion,

except as noted below.  From the limited evidence before the Court on this motion, the

Court is able to glean the following about the events leading up to Ms. Brown's injury.

In the early morning of July 14, 2005, Officer Titus was called to conduct an area

search in Ms. Brown's neighborhood.  Other officers responding to the scene before

Officer Titus informed him that he would be searching for two "armed carjackers."

Virtually no other details about these criminal suspects is available on the record before

the Court.  Thus, the Court cannot ascertain, for example, with what weapons the

suspects were armed; whether there had been any show of force by these suspects

prior to Officer Titus' arrival; or any other details about the degree of threat these

suspects would pose to an officer's safety.  The evidence is conflicting and incomplete

as to Ms. Brown's location and visibility to Officer Titus just before and during the time

when his police dog bit her.  Ms. Brown asserts that she was in her car at the time that

Officer Titus was searching her backyard and, when she saw him shine a light, she

stood up on the side of her car.  Defs.' Br., Ex. B at 111.  Ms. Brown recalls making a

greeting at that point to announce her presence.  Pl.'s Br., Ex. 8 at 8.  At that point, Ms.

Brown claims that she was pulled out of the car by the police dog.  *Id.*; Defs.' Br., Ex.

B at 112.  Officer Titus, on the other hand, testified in his deposition that, at the time he

15

entered Ms. Brown's backyard with his dog, he did not see anyone moving in the backyard or hear anyone there.  Defs.' Br., Ex. A at 93.  During the discovery phase of this litigation, the City took the position that Ms. Brown was actively concealing herself while Officer Titus searched nearby, although it does not flesh out this claim in its summary judgment briefing.  *See* Pl.'s Br., Statement of Add'l Disputed Facts ("ADF") ¶ 1, 2; Defs.' Reply [Docket No. 46], Reply to ADF ¶ 1.  The evidence before the Court is also unclear as to the nature of the warning issued, if any, at the commencement of the area search.  It is, however, clear that at no point during his search did Officer Titus announce his presence or give any verbal warning that he was searching with an unleashed police dog trained to bite and hold suspects.  Pl.'s Br., Ex. 3 at 113 & Ex. 5 at 241

A number of courts have found that conducting a search with a police dog trained to bite and hold a suspect without giving a warning of the dog's pending release and an opportunity to surrender peacefully may constitute excessive force.  *See*, *e.g.*, *Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2004) (holding that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender"), *abrogated in part on other grounds*, *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007); *Vathekan v. Prince George's County*, 154 F.3d 173, 180 (4th Cir. 1998) (holding that it would be objectively unreasonable to release a police dog into a house to search for a suspect without first giving a verbal warning); *Kopf v. Wing*, 942 F.2d 265, 268-69 (4th Cir. 1991) (reversing grant of summary judgment because the issue of whether or not officer gave a warning regarding the police dog was a genuine

issue of material fact); *see also Burrows v. City of Tulsa*, 25 F.3d 1055, 1994 WL 232169, *3 (10th Cir. June 1, 1994) (unpublished) (holding that jury could have found officer's actions objectively unreasonable where police dog trained to attack was released into a residential backyard without warning).  Conversely, no Tenth Circuit or Supreme Court precedent compels the conclusion that a verbal warning is mandatory in every case where a police dog is utilized.  In fact, the Supreme Court has recognized that even in cases involving the use of deadly force, a warning should be issued "where feasible," rather than recognizing a per se rule on this issue.  *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).  Similarly, the court in *Dennen v. City of Duluth*, 350 F.3d 786, 791 (8th Cir. 2003), held that deployment of a police dog without a leash did not constitute a per se use of excessive force, since certain circumstances raising concerns of officer safety may justify off-leash canine searches.  Taken together, these cases demonstrate the highly fact sensitive nature of the excessive force inquiry under the Fourth Amendment generally, as well as in the specific context of use of canine force.  *See Graham*, 490 U.S. at 396 (stating that the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each case").

The evidence before the Court on the City's motion for summary judgment does not extinguish all genuine issues of material fact as to whether a constitutional violation occurred.  Rather, viewing the evidence in the light most favorable to Ms. Brown, a jury could reasonably find that she was subjected to excessive force.  Taking as true Ms. Brown's version of the facts, she was in or near her car just before the time she was bitten, such that she would have been visible to an officer scanning her yard and vehicle with a flashlight, as Officer Titus apparently did.  She then announced her presence,

17

and a police dog almost immediately attacked her without warning or an opportunity to address the police officer in her yard.  On the other hand, the City has not provided sufficient evidence to allow the Court to weigh the "governmental interests at stake" so as to balance them against "the nature and quality of the intrusion on the individual's Fourth Amendment interests," as mandated by *Graham v. Connor*, 490 U.S. at 396. Since the Court cannot ascertain key details about the severity of the crime, the threat posed by the suspects, and the nature of their flight, the City cannot show that there are no genuine issues of material fact left to be resolved.  Thus, the City has not met its "burden of showing the absence of a genuine issue of material fact" on the issue of whether Officer Titus violated Ms. Brown's rights under the Fourth Amendment by using excessive force to seize her.  *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

This conclusion does not, however, end the analysis under Federal Rule of Civil Procedure 56.  Because Ms. Brown's claims against Officer Titus are time-barred, the Court must inquire whether the City is nonetheless entitled to summary judgment under the law governing municipal liability in § 1983 actions.

### b.  Analysis of the City's Liability

Ms. Brown identifies a few different theories of municipal liability on her excessive force claim in her summary judgment briefing.  Specifically, Ms. Brown contends that the City maintains an unconstitutional policy or custom allowing the use of excessive force by canine handlers and their police dogs; that the City failed to adequately train its police officers concerning constitutional utilization of police dogs; that the City ratified Officer Titus' unconstitutional conduct; and that Chief Whitman is liable in his official

18

capacity as head of the Denver Police Department for supervising Officer Titus'

unconstitutional conduct.  The Court addresses each of these theories in turn.

### i.  Unconstitutional Policy

A plaintiff may sue a municipality directly under § 1983 where "the action that is

alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by [the local government]

body's officers."  *Monell*, 436 U.S. at 690.  To establish municipal liability under § 1983,

a plaintiff need not show that the policy promulgated by the municipality is

unconstitutional in every application; proof that the policy is unconstitutional as applied

in the plaintiff's case will suffice.  *See Christensen v. Park City Municipal Corp.*, 554

F.3d 1271, 1279 (10th Cir. 2009).  However, "[t]he fact that a particular official . . . has

discretion in the exercise of particular functions does not, without more, give rise to

municipal liability based on the exercise of that discretion.  The official must also be

responsible for establishing final government policy respecting such activity before the

municipality can be held liable."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83

(1986).

The policy at issue in this case is the Denver Police Department's Canine Unit

Manual, which the City submitted with its motion for summary judgment.  That this

policy is the official policy of the City with respect to use of canine force cannot be

doubted since the Manual itself proclaims to "serve as the official policy guide for Police

Service Dogs procedures."  Defs.' Br., Ex. D at p. 00108.  The provisions of the Manual

pertaining to open area searches and off-lead pursuit are specifically at issue here

because they apply to the situation that resulted in Officer Titus' police dog biting Ms.

Brown.  As the City highlighted in its motion, those sections of the Manual provide, in

pertinent part:

> d.  Open Area Searches
>
> 1.  In consideration of the likelihood of a non-secure perimeter and the high probability of the presence of innocent persons, canine officers shall be especially careful to ensure that all open area searches are conducted with the dog under the direct handler control.
>
> 2.  Prior to commencing an open area search, the canine officer shall announce over the police radio that the search is about to commence, that perimeter officers should hold the perimeter, and that all officers not directly involved in the search should stay out of the perimeter and keep all uninvolved persons and vehicles out of the perimeter.
>
> f.  Off-Lead Pursuit and Physical Apprehension
>
> 1.  All canine officers shall be aware of the following hazards before deploying their police service dog on an off-leash pursuit and physical canine apprehensions. The canine officer will consider following circumstances before the PSD will be deployed:
>
> (a)  Bystanders in the area . . . .
>
> (d)  Circumstances that may adversely impact the handler's ability to assure uninterrupted Handler Control of the canine if off-lead.

Defs.' Br. at 8-9 & Ex. D at 00116-18.  Both the open area search and off-lead pursuit

provisions fall under the Manual's heading of "Use of Canines."  Also under this general

heading is a subpart entitled "Verbal Commands," which states that at least three verbal

warnings will be given before a police dog is deployed and that the canine handler will

allow a sufficient interval between such warnings and deployment of the dog to allow

the suspect to surrender.  Defs.' Br., Ex. D at 00115.  This same section, however,

exempts officers from giving a verbal warning if the officer is in immediate danger and it

would be disadvantageous to issue a verbal warning.  *Id.*  Ms. Brown contends that the

above cited provisions, among others, are unconstitutional because they allow canine handlers to use excessive force by deploying police dogs without giving a verbal warning and without using a leash, even in searches of residential areas.

Upon review of the provisions of the Denver Police Department's canine policy, the Court concludes that Ms. Brown has not shown that the policy caused her injury as required under *Monell*.  The Department's policy directs canine handlers to issue multiple verbal warnings and to allow a suspect a reasonable opportunity to surrender unless the officer is in physical danger.  The policy instructs a canine officer conducting an off-leash search to maintain direct control over the officer's police dog during any open area search and to account for innocent bystanders as well as circumstances that may diminish the handler's unfettered control over the dog before deploying it without a leash.  Together, these provisions establish constitutional guidelines for canine handlers while leaving the canine handler discretionary decisionmaking authority as to the manner in which a police dog is deployed, taking into consideration the circumstances confronting that officer.  Nowhere does the policy directly instruct a canine officer to forego a verbal warning when conducting an open area search or to commence an off-lead search in a residential area where local residents are likely to be present.

The discretion that the City's policy allows for canine officers to conduct off-lead searches and, in certain circumstances, not issue a verbal warning before doing so does not suffice to impose liability on the City.  In *Christensen v. Park City Municipal Corp.*, 554 F.3d at 1280, the Tenth Circuit addressed, albeit in dicta, the issue of whether a policy allowing some discretion to a police officer can be said to be the "moving force" behind that officer's unconstitutional exercise of such discretion.  There,

21

the Tenth Circuit discussed the Eighth Circuit's decision in *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007), a case which involved similar facts to the instant case. *Christensen*, 554 F.3d at 1280.  The Tenth Circuit explained:

> *Szabla* was an excessive force claim arising from an incident where a law enforcement officer, exercising discretion given him by city ordinances, instructed a police dog to search for and bite the plaintiff.  The litigated issue was whether a municipality is liable under § 1983 when a police officer enforces a constitutional ordinance in an unconstitutional manner. In that case, however, it was the discretionary decision of the officer to give the dog the order to bite that was the source of the plaintiff's injury. No city ordinance required that.

*Christensen*, 554 F.3d at 1280.  The *Christensen* court then distinguished the discretionary decision of the officer in *Szabla*, which led the Eighth Circuit to find no municipal liability based on the municipality's policy, from the case before it, which involved officers carrying out the express terms of a municipal ordinance.  *Id.*  In the latter circumstance, the Tenth Circuit held that the municipality was liable because its policy directed the action ultimately found to be unconstitutional.  *Id.*  But the Tenth Circuit stated that if the officers had gone beyond the direction of the municipal ordinance and carried out their task in a manner constituting unsanctioned police misconduct, then municipal liability for those actions would be inappropriate.  *Id.*  The Supreme Court has expressed this same idea, opining that "[t]he fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation."  *City of Oklahoma City*, 471 U.S. at 824 n.8.  As Justice O'Connor stated in the plurality opinion in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986), "[t]he fact that a particular official – even a policymaking official – has discretion in the

exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."

Applying these precedents to the instant case results in the conclusion that the City's policy was not the "moving force" behind Officer Titus' alleged unconstitutional use of excessive force against Ms. Brown.  *See Monell*, 436 U.S. at 694.  The City's policy does not compel unconstitutional action by Denver Police Department canine officers of the type that Ms. Brown identifies.  As discussed previously, whether the dog bite incident in this case constituted excessive force under the Fourth Amendment is a context dependent inquiry.  The policy here instructs canine officers generally to issue verbal warnings, to give suspects an opportunity to surrender, and to consider whether bystanders would be at risk from an off-lead canine deployment.  That Officer Titus may have acted unconstitutionally in this instance when all the relevant circumstances are known and evaluated is not sufficient to impose liability on the City under § 1983.

### ii.  Unconstitutional Custom or Usage

Even if plaintiffs cannot identify an official policy of a municipality that directly caused a constitutional violation leading to their injuries, they may still be able to prove that the violation of their constitutional rights was occasioned by "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  *Praprotnik*, 485 U.S. at 127.  There is a three-part test that plaintiffs in the Tenth Circuit must satisfy to prove that a municipality is liable under *Monell* based on custom.  *See Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). The plaintiff must prove:

23

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the . . . [municipality's] employees; (2) Deliberate indifference to or tacit approval such misconduct by the . . . [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . [municipality's] custom and that the custom was the moving force behind the unconstitutional acts."

*Powell v. City and County of Denver, Colo.*, 973 F. Supp. 1198, 1204 (D. Colo. 1997)

(quoting *Gates*, 996 F.2d at 1041).

Ms. Brown infers in her response brief that the City is liable for her injury based on an unconstitutional custom of the Denver Police Department of utilizing police dogs in searches without maintaining direct handler control in order to apprehend suspects without advance warning. Ms. Brown, however, offers no proof approaching the level required to show a "persistent and widespread practice of unconstitutional misconduct." *Gates*, 996 F.2d at 1041. The only evidence along these lines that Ms. Brown submits is an annual review of canine deployments that is appended to the police report describing her apprehension by Officer Titus' police dog. *See* Pl.'s Br., Ex. 6 at 64-66. This review details only five instances, including Ms. Brown's case and two others involving Officer Titus and his police dog, where unintended persons were bitten by police dogs. *Id.* at 65. Aside from the incident involving Ms. Brown, officers in two of the instances gave a verbal warning, an officer was disciplined for failing to do so in another case involving a building search, and a man charged the officer before being bitten in the remaining case. Ms. Brown also makes reference in her brief to another case involving Officer Titus where an unintended person was apprehended by a police dog that is not included in the incidents listed in the police report. Pl.'s Br. at 6, 17. However, Ms. Brown does not offer any evidence of this incident and her remaining

24

proffer on the custom issue is nothing but unsupported argument.  This is insufficient to show that the City is liable for Ms. Brown's injury on the basis of an unconstitutional custom.  *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

### iii.  Failure to Train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton*, 489 U.S. at 388.  Under this deliberate indifference standard, that a particular officer is poorly trained; that an otherwise sound training program was negligently administered in a particular case; or that an incident could have been avoided if an officer had more or better training, does not suffice to impose liability on the municipality.  *Id.* at 390-91.  To satisfy the deliberate indifference standard for a failure to train claim in the Tenth Circuit, the plaintiff must first prove the training was in fact inadequate, and then prove the following:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000).

Construing the evidence in Ms. Brown's favor, she has not satisfied the initial step of proving that the Denver Police Department provided inadequate training to its

canine handlers and police dogs, including Officer Titus and his police dog.  In its

motion, the City discussed the training received by both Officer Titus and his dog in

some detail.  *See* Defs.' Br. at 4-5; *see also* Defs.' Reply at 2 (correcting page

references to deposition testimony).  While Ms. Brown quarrels with some of the City's

alleged facts regarding the training received by Officer Titus and his police dog, she

admits the majority of these facts and offers no rebuttal evidence on the issue of what

training the Denver Police Department provides to its canine handlers and police dogs.

Thus, the undisputed facts establish that Officer Titus received certification as a canine

handler from the National Police Canine Association ("NPCA") on October 30, 2000;

that Officer Titus' police dog successfully completed NPCA certification tests in

obedience, disengagement from an apprehension, and area and building searches; and

that both Officer Titus and his police dog generally engage in weekly maintenance

training supervised by the Denver Police Department Canine Unit Sergeant and

trainers.

It appears that Ms. Brown's failure to train claim is based wholly on her own

incident.  The Supreme Court in *City of Canton*, 489 U.S. at 390-91, precluded this

meager quantum of proof from establishing that a municipality's inadequate training

constitutes deliberate indifference to the constitutional rights of its inhabitants.  There

the Court made clear that a particular officer's training has little bearing on a

municipality's entire training program and, thus, required that plaintiffs produce evidence

of a specific deficiency in a municipality's "training program" and demonstrate how that

deficiency actually cased the injury at issue.  *City of Canton*, 489 U.S. at 391.

Ms. Brown has failed to show any genuine issue of material fact that could lead a

26

jury to find that the City has so failed in its training efforts for its canine program that it can be said to be deliberately indifferent.  Because the Court can identify no deficiency in the training program at issue, the City is entitled to summary judgment on Ms. Brown's failure to train claim.

### iv.  Ratification by Final Policymaker

"[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality."  *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (citing *Praprotnik*, 485 U.S. at 127); *see also David v. City & County of Denver*, 101 F.3d 1344, 1358 (10th Cir. 1996) (stating that a reviewing body that constitutes a municipality's final policymaker may ratify the actions of a subordinate official and the reasons for them, thereby rendering the municipality liable under § 1983).  Under a § 1983 theory of ratification, "[t]he final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation."  *Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005) (citing *Praprotnik*, 480 U.S. at 127).

Ms. Brown's claim that the City is liable for Officer Titus' conduct by its ratification of that conduct fails for lack of proof.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  Here, Ms. Brown has come forward with no

evidence that one of the City's final policymaker's ratified Officer Titus' conduct.  As evidence of ratification, Ms. Brown offers is the report written by a sergeant in Denver Police Department's Canine Unit analyzing and approving Officer Titus' conduct.  Ms. Brown also points to deposition testimony of the same sergeant stating that Officer Titus' conduct was within the Denver Police Department's canine policy.  Neither of these pieces of evidence show that the sergeant in question was a final policymaker capable of approving and adopting Officer Titus' actions, such that they became an official act of the City.

The best evidence of the identity of the final policymaker with respect to the canine policy is found on the Canine Unit Manual's first page, which indicates that the policy guide is from Chief Whitman.  The Tenth Circuit has identified three elements that help determine whether an individual is a "final policymaker": '(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decision[s] are final – i.e., are the subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."  *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (quoting *Praprotnik*, 485 U.S. at 127).  Ms. Brown has not specifically identified any evidence showing that the sergeant in question satisfies this test, and the record before the Court – showing that the canine policy was issued by Chief Whitman and that the sergeant's report was made to a higher officer – suggests the opposite.  Accordingly, the City is entitled to summary judgment on Ms. Brown's ratification theory of municipal liability.

## v.  Supervisory Liability

A supervisor is not liable under § 1983 "unless the plaintiff demonstrates '[a]n affirmative link' between the occurrence of the constitutional deprivation and the adoption of any plan or policy – express or otherwise – *showing their authorization or approval of such misconduct*."  *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee County*, 894 F.2d 1176, 1187 (10th Cir.1990) (emphasis in original) (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).  Thus, "the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'"  *Jenkins*, 81 F.3d at 995 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)).  This standard is met where the plaintiff shows that the supervisor directed the constitutional violation or had actual knowledge of and acquiesced in the violation.  *Id.*

Ms. Brown seeks to hold Chief Whitman liable in his supervisory capacity for Officer Titus' actions.  However, Ms. Brown has not shown the "affirmative link" between Chief Whitman and the alleged constitutional violation that is necessary to satisfy the supervisory liability standard.  As with Ms. Brown's other theories of municipal liability, she has not submitted evidence that would allow the Court to find that Chief Whitman was involved in her dog bite incident in any way, either while it occurred or after the fact in a review capacity.  Instead, Ms. Brown apparently seeks to impose liability on Chief Whitman merely because he "is the obvious head of the department and ultimately responsible for each incident."  Pl.'s Br. at 18.  Allowing Ms. Brown to go forward with her claim against Chief Whitman or the City on these grounds would violate the established principles that "there is no concept of strict supervisor liability under § 1983," *Jenkins*, 81 F.3d at 994, and that § 1983 does not create a *respondeat superior*

29

cause of action against government officials or municipalities.  *See Monell*, 436 U.S. at 691.

In sum, while there are genuine issues of material fact as to whether Ms. Brown suffered a Fourth Amendment violation in this case, the City and Chief Whitman are entitled to summary judgment because Ms. Brown has not demonstrated a basis on which to hold them liable for her injury.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion for summary judgment [Docket No. 33] is GRANTED.

DATED August 3, 2009.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge